UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| RICHARD W. MOTLEY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 1:15-CV-141-JD |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

On June 8, 2015, Plaintiff Richard W. Motley ("Motley"), by counsel, filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security ("Commissioner") [DE 1]. Motley filed his brief in support [DE 17, as amended, DE 18, DE 19], to which the Commissioner responded [DE 24], and Motley replied [DE 27]. The matter is now ripe for ruling, and for the reasons stated below, the Court remands this case to the Commissioner for further proceedings.

## I. FACTS

### A. Procedural History

On March 1, 2012, Motley applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"),[1] alleging a disability onset date of May 30, 2010. Motley cited lower lumber fusion, degenerative disc disease, arteriosclerosis, arthritis, mini strokes, and depression as his disabling conditions. Motley's applications were denied initially in June 2012,

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 401.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq.* Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

and on reconsideration in December 2012. On October 1, 2013, Administrative Law Judge William Pierson ("ALJ") held a hearing, during which Motley and a vocational expert ("VE") testified.

On December 19, 2013, the ALJ issued an unfavorable decision. The ALJ determined that Motley had not engaged in substantial gainful activity since May 30, 2010, and suffered from the following severe impairments: residuals of a remote lumbar fusion, coronary artery disease, major depression-depressive disorder, and alcohol dependence. After finding that Motley did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations, the ALJ reasoned that Motley had the residual functional capacity ("RFC")[2] to perform light work involving only simple, routine, and repetitive tasks in a low stress environment with only occasional environmental changes, limited by occasional kneeling, crouching, crawling, balancing, and squatting, occasional use of ramps and stairs, no climbing or ascending/descending on ropes, ladders, and scaffolds, and no more than occasional exposure to concentrated amounts of fumes, dust, gasses, or temperature extremes.

Given this RFC, the ALJ opined that Motley was unable to perform his past relevant work as a tractor-trailer truck driver because the physical demands exceeded Motley's RFC. The VE testified that based strictly on the VE's review of Motley's vocational background and the hypothetical posed to her (offering the above recited RFC), Motley could perform work as a "repack room worker," "stock checker," and "office helper." The ALJ agreed with Motley's counsel that providing a hypothetical premised on sedentary work (as opposed to light work) would have caused Motley to be deemed disabled under the grid rules, on account of his age, high school education, prior work experience, and lack of transferable skills. *See* 20 C.F.R. pt.

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

2

404, Subpt. P, Appendix 2.[3]  However, since the ALJ ultimately relied on an RFC involving light work, the ALJ ruled that Motley was not disabled given his ability to perform other work in the economy.

On March 6, 2015, the Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).  Motley seeks review of the Commissioner's decision thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.    Relevant Background**

Motley has been battling depression for approximately twenty years.  In May 2008, Motley had a lumbar fusion due to degenerative disc disease and stenosis at the L4-L5 and L5-S1 levels.  Motley also suffers from coronary artery disease and had cardiac stent placements performed in April 2010 and June 2012.

Motley testified that he was terminated in mid-2011 as a tractor-trailer truck driver because he started self-medicating by abusing alcohol in order to mask his depression, back pain, and heart problems.  After losing his job, his depression escalated and his drinking spiraled out of control.  Motley only stopped drinking on February 20, 2012, after being admitted to the hospital and diagnosed with major depression, suicidal thoughts and ideation, alcohol dependence, hypertension, coronary artery disease, and possible seizure disorder.  Upon

---

[3] The medical vocational guidelines, commonly known as the grids, are tables which evaluate a claimant's ability to work by matching his age, education, and work experience with his work capability. 20 C.F.R. pt. 404, Subpt. P, Appendix 2.  However, the presence of other, non-exertional limitations, not factored into the grids, may preclude an ALJ from relying on the grids and require consultation with a VE when the non-exertional limitations "substantially reduce a range of work an individual can perform." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citation omitted). Motley was 49 ½ years old as of his onset date, but he would have been "closely approaching advanced age" (50 to 54 years old) through the remaining applicable period, and the age categories are not to apply mechanically in a borderline situation such as this case. 20 C.F.R. § 404.1563(b).  As a result, grid rules 201.09-201.16 are relevant here and a high school graduate of Motley's age who could not perform vocationally relevant past work and did not have transferable skills would ordinarily be considered disabled at the sedentary level of work. 20 C.F.R. pt. 404, Subpt. P, Appendix 2.

3

Motley's admittance, it was documented that Motley was unemployed, and that despite his efforts, he was unable to receive regular medical care because he had no insurance or other financial means.

After his discharge from the hospital, Motley was provided therapy and psychiatric services through November 2012, during which time records reflect that he continued to suffer from major depressive disorder (recurrent, severe), alcohol dependence (in remission), and was consistently assigned Global Assessment of Functioning ("GAF") scores of 48 or below.[4] Despite his ongoing and severe depression, Motley was terminated from outpatient therapy in November 2012, because he violated the "no show" policy. The discharge records indicated that Motley needed assistance (or reminders) with attending his medical appointments. Motley testified that he quit going to his psychiatric therapy because he could not afford to pay the bills. Without his treatment and medication, Motley stated that his depression became worse.

By early 2013, Motley testified that his back pain had returned to being constant, but he did not seek further treatment because he did not have health insurance. By late 2013, his chest angina was controlled with medications after his second stent placement.[5] Motley testified that he thought he had the ability to walk about ¼ mile, sit for no more than an hour due to back pain, and perform household chores with breaks. His need for breaks while slowly performing activities of daily living is corroborated by consultative examinations. R. at 470-74, 476-79, 619-

---

[4] A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* Diagnostic & Statistical Manual of Mental Disorders-Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's level of functioning. While GAF scores have been replaced by the World Health Organization Disability Assessment Schedule, at the time relevant to Motley's assessment, GAF scores were still in use. *See* Wikipedia, Global Assessment of Functioning, http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (last visited September 21, 2016). A score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work).

[5] Motley indicated that as of February 2013, his cardiologist was the only doctor who would see him without insurance. R. at 245.

22. Motley did not think he could perform work that required him to stand or sit six hours in a day, but he believed that his health would be better if he could get medical treatment. The record is replete with other references to Motley's having no job and no insurance, and with his being frustrated for not being able to access health care. *See*, *e.g.*, R. at 476-79, 566, 595-96, 619-22, 816.

## II.  STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary

5

support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if an error of law is committed, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. ANALYSIS

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform his past work under step four and other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Motley contends that the ALJ's RFC determination was not supported by substantial evidence because the ALJ discredited Motley's alleged limitations only after improperly (1) failing to consider Motley's explanations for inconsistent medical treatment, and (2) equating Motley's activities of daily living with an ability to stand/walk for six hours in a workday.[6] The Court agrees, and because the flawed credibility assessment led to an insufficiently supported RFC determination, upon which the VE's testimony was based, the Court need not address Motley's remaining contention concerning the reliability of the VE's job statistics given their undisclosed source.[7]

---

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; sitting up to at least 6 hours in an 8 hour workday; and, standing/walking, in combination, up to at least 6 hours in an 8 hour workday. 20 C.F.R. § 404.1567(b); SSR 83-10.

[7] The Seventh Circuit recently articulated concerns with VE testimony, both in terms of calculating the number of jobs available in the national economy and relying too heavily on vague references to their own experience to support their testimony. *Hill v. Colvin*, 807 F.3d 862, 872 (7th Cir. 2015) (Posner, J., concurring); *see*

7

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2; *see also Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

In turn, in formulating an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, the ALJ must base the determination upon the medical evidence as well as "other evidence, such as testimony by the claimant." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Thus, an ALJ's flawed credibility determination can affect the ALJ's RFC findings about the extent of a claimant's limitations. *Id*. at 820.

The Court finds that the ALJ's credibility finding is not sufficiently supported because the ALJ ignored explanations for Motley's failing to seek or comply with treatment, and the ALJ failed to acknowledge the differences between the demands of Motley's daily activities and those of a full-time job.

---

*also Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) ("We have recently expressed concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings") (citations omitted).

In discounting Motley's complaints of pain and limiting effects of Motley's physical and mental impairments, the ALJ repeatedly noted that Motley inconsistently sought treatment. An ALJ may consider as part of the credibility analysis whether the claimant sought treatment commensurate with their claimed limitations. SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaint, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). But in doing so, the ALJ must also consider any explanations for failing to seek or comply with treatment. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (similar); SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). In particular, a claimant's inability to afford medication or doctors' visits can excuse the failure to seek such treatment. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment") (citing SSR 96-7p, at *8).

Here, despite repeatedly citing Motley's limited treatment history and lack of medical records to support Motley's alleged restrictions, the ALJ failed to consider any explanations for the deficit. That is a notable omission, since there is abundant evidence that Motley was unable to afford treatment and medications, and that he was frustrated with his circumstances. By way

9

of example, the ALJ discredited Motley for not having sought psychotropic medications, counseling, and therapy until his hospitalization in February 2012. But the ALJ did so, without discussing the fact that Motley's job loss in 2011 limited his access to treatment, which, in turn, landed Motley in the hospital only months later because of severe depression and alcohol dependence. In addition, Motley explicitly testified that he quit participating in psychiatric treatment in late 2012 and didn't seek further treatment for his back pain because he could not afford it without insurance. R. at 54-55, 67. Motley's testimony in this respect is corroborated by various medical records indicating Motley was unable to access treatment, despite his need for it. R. at 406-08 (psychiatric medical record dated February 22, 2012, indicating that without a job and insurance Motley is unable to receive regular health care); 476-79 (mental consultative examination of April 2012, indicating no personal income, no health insurance, inadequate finances, and inadequate access to healthcare); 566 (medical record dated May 16, 2012, indicating Motley feels frustrated that he cannot afford heart medications because he has no income or insurance); 595-96 (medical record dated July 16, 2012, involving a follow-up on Motley's chest pressure and indicating that due to having no money, Motley's only source of medications are samples); 619-22 (physical consultative examination dated November 2012, noting that he has no insurance to get further evaluations of his back); 672-75 (discharge from mental health treatment in November 2012, noting problems with access to healthcare); 816 (office note dated June 3, 2013, noting that Motley "cannot even afford generic Plavix"). Thus, the ALJ's opinion makes clear that he drew negative inferences about Motley's alleged symptoms and their functional effects on account of Motley's failure to pursue regular medical

treatment, without discussing whether Motley's lack of financial means to afford medical care served as a legitimate excuse.[8]

In short, the ALJ erred in discrediting the testimony about Motley's physical and mental limitations based on his lack of treatment without explaining whether Motley's lack of insurance and financial means excused the deficit. *Craft*, 539 F.3d at 679; *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that the ALJ erred in discrediting the claimant based on an absence of objective support for the limitations, where the claimant's lack of insurance prevented her from seeking medical attention).

The ALJ also failed to properly consider Motley's daily activities when he relied on them in the credibility assessment. An ALJ can and should consider a claimant's activities when evaluating credibility. *Roddy*, 705 F.3d at 639. As the Seventh Circuit has warned, though, "this must be done with care." *Id.* In particular, the Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.* More recently, the Seventh Circuit has indicated that without acknowledging the differences between the demands of such activities and those of a full-time job, an ALJ is not entitled to use successful performance of life activities as a basis to determine that a claimant's claims of a disabling condition are not credible. *Ghiselli v. Colvin*, No. 14-2380, 2016 WL 4939535, at *5 (7th Cir. Sept. 16, 2016) ("the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an

---

[8] The ALJ's passing references to Motley's inability to afford healthcare does not sufficiently indicate whether the ALJ believed Motley's lack of financial resources excused Motley's failure to seek treatment— especially where, as here, the ALJ clearly discounted Motley's alleged limitations based on the lack of treatment.

11

employer") (citation omitted).  Similarly, when an ALJ considers a claimant's activities, they should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680.

The Court finds that the ALJ's discussion of Motley's daily activities reflects an approach that does not support an adverse credibility determination. The ALJ repeatedly noted that Motley's continuing to walk and perform a wide variety of daily activities and hobbies, such as cooking, cleaning, woodworking, and playing pool, darts, and cards, were inconsistent with Motley's allegations of greater limitations. R. at 24, 26, 28.  The ALJ also explained that Motley "had no difficulty with cooking and cleaning" and "was able to perform household chores and manage finances without difficulty." R. at 29, 30.  However, such findings ignore the record evidence (including notations in consultative examinations upon which the ALJ relied), revealing that Motley was only able to perform such activities slowly, with breaks, and not without consequence. R. at 199-202, 224-27 (self-reported inability to stand and cook for long periods, and need to rest up to thirty minutes after walking ¼ mile); 470-74 (April 2012 physical consultative examination, indicating Motley performs ADL "slower with rest periods" and he continues to suffer from chronic lower back pain); 476-79 (April 2012 mental consultative examination, indicating Motley is independent in his personal ADL but really cannot do much around the house due to his problems of shortness of breath and fatigue, and noting that his "prognosis for significant improvement in the near future is poor"); 619-22 (November 2012 physical consultative examination, noting Motley can do some household chores like sweeping, vacuuming, cooking, washing dishes, and climbing stairs, but he does them with short intervals or with breaks and he continues to suffer from low back pain, depression, and a history of

coronary artery disease). Thus, the modest tasks performed sporadically by Motley, with breaks, are not indicative of his ability to maintain full-time work, at least not without the ALJ acknowledging the differences between the demands of these activities as successfully performed by Motley, with the demands of a full-time job. *See Ghiselli*, 2016 WL 4939535, at *5.

Moreover, the ALJ's reliance on the state agents' physical and mental RFC assessments (exhibits 11F,[9] 16F,[10] 22F, 24F) in finding Motley only partially credible as to his limitations given his activities of daily living does not supply the evidence necessary to independently support the credibility determination. The RFC assessors concluded that Motley was capable of performing activities of daily living within normal limits, but did so without referencing Motley's assertions that his activity level depended on his pain level and whether he was having a good or bad day. R. at 197-204. Moreover, the ALJ's reliance on these assessments does not negate the ALJ's mischaracterization of Motley's stated activities. The ALJ specifically discredited Motley's claimed limitations given that he engages in woodworking as a hobby and plays pool, darts, and cards. R. at 24, 26. However, Motley's functional reports actually indicated that he has been unable to engage in these activities because of his illnesses, R. at 201, 226, and Motley's testimony before the ALJ was consistent in this respect. R. at 55-56.

These missteps call into question the soundness of the ALJ's reasoning for discounting Motley's complaints, which then served as a basis for the ALJ's ultimate RFC finding. For those reasons, the Court finds that the ALJ's credibility analysis was flawed and this error was not

---

[9] R. at 494-97 (deeming Motley's allegations only partially credible given that his ADL—specified as, "personal hygiene, pet care, cooks, plumbing repairs, dishes, vacuums, drives, leaves home alone, shops, manages money, watches TV, socializes, follows written/spoken instructions"—appeared within normal limits).

[10] R. at 534-41 (deeming Motley to be partially credible and noting that his ADL indicate an ability to walk ¼ mile, dust, clean dishes, and do woodwork).

13

harmless. If the ALJ had attributed greater credibility to Motley's claims about his limitations, he might have incorporated more restrictions into his RFC finding, especially with respect to Motley's ability to stand, walk, or sit for prolonged periods of time. For instance, had the ALJ believed Motley's testimony, in that he was unable to stand/walk up to six hours in an eight-hour workday, then Motley would have been limited to at least sedentary work, *see* 20 C.F.R. § 404.1567(b); SSR 83-10, at which point the ALJ would have necessarily had to consider whether Motley was disabled[11] under the grid rules. *See* 20 C.F.R. pt. 404, Subpt. P, Appendix 2.

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Motely is capable of performing other work. Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Motley's claimed (and potentially credible) limitations. Therefore, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Motley is capable of performing.[12] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. The remedy for the shortcomings noted herein is further consideration, not an award of benefits.

---

[11] Should the ALJ determine that Motley is disabled and suffers from a substance use disorder during the relevant period, then a materiality determination may be required consistent with SSR 13-2p.

[12] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Motley's medical records, nor did she indicate in her responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, rather than on the record itself or the limitations of the claimant himself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: September 26, 2016

           /s/ JON E. DEGUILIO
          Judge
          United States District Court